E-FILED
Monday, 30 September, 2013  02:54:56 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| KELLEY HAMILTON NOLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:12-cv-04045-SLD |
| | ) |
| CAROLYN W. COLVIN, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

ORDER

Plaintiff Kelley Hamilton Nolen's application for supplemental Social Security benefits was denied by an Administrative Law Judge (ALJ). She appealed that decision to this Court, seeking judicial review of the Commissioner's determination that she is not disabled within the meaning of the Social Security Act and that she is not eligible for Disability Insurance Benefits. ECF No. 9. The Commissioner seeks affirmance of the ALJ's decision. ECF No. 12. For the reasons set forth below, Nolen's Motion for Summary Judgment is granted, and the Commissioner's Motion for Summary Affirmance is denied.

BACKGROUND

Nolen filed for Disability Insurance Benefits and Supplementary Security Income on May 6, 2009, alleging that her disability began June 16, 2004. R. 16. She later amended her alleged onset date to June 1, 2007. *Id.* The claims were denied initially and on reconsideration, prompting Nolen to request a hearing with an ALJ. A hearing was held on February 9, 2011. The ALJ found claimant to have the following severe impairments: "Schmorl's nodes of lumbar spine, status post fusion of cervical spine, obesity, anxiety or post traumatic stress disorder

(PTSD) and depression." R. 18. Nevertheless, the ALJ found that Nolen has the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 [C.F.R. §§] 404.1567(a) and 416.967(a) except that she is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; sit 1 and ¼ hours at a time for a total of 6 hours a day; stand 45 minutes at a time and walk 1 block at a time for a total of standing and walking 4 hours a day; no climbing ladders, ropes or scaffolds; no hazards such as dangerous machinery or unprotected heights; occasional climbing of ramps and stairs; occasional balancing; due to side effects from medication, no detailed or complex work; occasional work with the general public and coworkers but not as a member of a team. The claimant is overweight. Her weight was taken into consideration in formulating her residual functional capacity.

R. 20–21. Though the ALJ determined that Nolen could not perform any past relevant work, the ALJ did not find Nolen disabled under the Social Security Act and did not afford her any benefits because the vocational expert (VE) testified that Nolen could perform jobs that exist in significant numbers in the national economy. After the ALJ denied Nolen's claim, the Appeals Council denied review, and Nolen now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## LEGAL FRAMEWORK

### I. District Court Review of the ALJ's Decision

The Court's function on review is not to try the case *de novo* or supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted). Rather, the ALJ must sufficiently articulate her assessment of the evidence to assure the Court that she considered the important evidence and enable the Court to trace the path of her reasoning. *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999). Further, the ALJ's decision must build an accurate and logical bridge between the evidence and the ultimate conclusions. *Id.* "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)).

## II. Entitlement to Benefits

In order to be entitled to Supplemental Security Income (SSI) and/or Disability Insurance Benefits (DIB), a plaintiff must show that her inability to work is medical in nature and that she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the plaintiff must suffer from a medically determinable physical or mental impairment, or combination of impairments, that can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42

U.S.C. § 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

> The five-step test requires the ALJ to evaluate whether the plaintiff:
>
> 1) Has not, during the relevant time period, performed any substantial gainful activity;
>
> 2) Suffers from an impairment that is severe or whether a combination of her impairments is severe;
>
> 3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);
>
> 4) Is unable to perform her former occupation; and
>
> 5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 will require the ALJ to make a finding about the plaintiff's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is then used at steps 4 and 5 to determine whether the plaintiff can perform past relevant work or can adjust to other work, respectively. *Id.*

The plaintiff has the burden of production and persuasion at steps 1 through 4. But once the plaintiff shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the plaintiff is able to engage in some other type of substantial

gainful employment (step 5).  *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

## DISCUSSION

Nolen contends that the ALJ erred in several respects.  First, Nolen claims that the ALJ's RFC assessment was flawed because it did not account for Nolen's social limitations; her problems with concentration, persistence, and pace; her pain; or her GAF scores.  Nolen argues that the ALJ wrongfully conflated the ability to perform limited daily activities with the ability to perform substantial gainful activity.  She also challenges the ALJ's credibility finding.

### I.  Nolen's RFC

The "residual functional capacity (RFC) is an administrative assessment of what work-related activities an individual can perform despite her limitations."  *Dixon v. Massanari*, 270 F.3d 1171, 1178–79 (7th Cir. 2001).  The RFC must be supported by substantial evidence.  *Cannon*, 213 F.3d at 975.  Substantial evidence is evidence that a reasonable mind might accept to support the ALJ's decision.  *Richardson*, 402 U.S. at 401.  Substantial evidence includes both medical and nonmedical evidence in the record that the ALJ must consider.  *See* 20 C.F.R. § 404.1545; *Dixon*, 270 F.3d at 1178–79.  In this case, the ALJ determined that Nolen had the RFC to perform sedentary work except that she was limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently.  R. 20.  The ALJ further determined that Nolen could sit for 1.25 hours a day for a total of 6 hours a day and stand for 45 minutes at a time.  R. 20–21.  In limiting her movement, the ALJ found that Nolen could walk one block at a time and could walk or stand for a total of four hours per day.  R. 21.  Further, the ALJ limited her to occasionally climbing ramps and stairs and to occasional balancing.  To accommodate for Nolen's social functioning, the RFC allowed Nolen to have occasional contact with the public and did not allow her to work as a member of a team.  R. 21.  The ALJ also

recommended that Nolen not perform any complex or detailed work because of the possible side effects of her medication. R. 21. The ALJ said she included Nolen's obesity in determining Nolen's RFC.

### A. The ALJ's Accounting of Social Functioning

Nolen argues that the frequency of contact with coworkers or the public provided in the RFC is not sufficient to accommodate her social functioning limitation. The Court disagrees. The Court finds that the RFC was supported by substantial evidence and incorporated the ALJ's findings of social functioning.

The ALJ elaborated on her finding that Nolen has moderate difficulties in social functioning with evidence from Nolen's medical records and testimony presented at the hearing. R. 19. The ALJ explained that Nolen "maintained average eye contact, was well-groomed, was cooperative and pleasant with examiners, she claimed to want to return to her job as a waitress and did not allege any problems getting along with people, and also did not show any signs of aggression toward others." R. 19. Nolen challenges the ALJ's RFC limitation related to social functioning—that Nolen is limited to "occasional work with the general public and coworkers but not as a member of a team"—because the ALJ did not explicitly discuss the findings of Dr. Russell Taylor, a State agency medical consultant, in her decision. An ALJ "need not discuss every piece of evidence in the record," however, so long as he "confront[s] the evidence that does not support his conclusion and explain[s] why it was rejected." *Indoranto*, 374 F.3d at 474. Here, the ALJ's findings are consistent with those of Dr. Taylor, who opined that, "[s]ocially," Nolen "is capable of interacting with others in a work setting that has reduced social/interpersonal intensity. She has safety concerns that limit her ability to work in the general public." R. 203. Given the similarity between Dr. Taylor's opinion and the

6

ALJ's RFC limitation regarding social functioning, Nolen's challenge on that basis is unfounded. The Court accordingly finds that Dr. Taylor's opinion is not contrary to the ALJ's RFC. Thus, the ALJ did not err by declining to explicitly comment on Dr. Taylor's opinion.

Nolen also contends that the RFC does not address how her symptoms would distract others. She cites to questions that Nolen's attorney asked the VE to show that an individual's contacts with her coworkers can be distracting whether or not the contact was frequent. Pl.'s Mot. Summ. J. 13; R. 560–61. An ALJ is free to determine the extent to which a claimant's disability will distract others. *See Smith v. Astrue*, No. 09 C 2392, 2010 WL 3526655, at *10 (N.D. Ill. Sep. 1, 2010). The ALJ discussed evidence in her decision to support the conclusion that Nolen can occasionally interact with the public and coworkers as long as she does not work as a member of a team. She has held jobs that previously required her to interact with coworkers and the public and also attended Black Hawk College. R. 30, 95–97. She had no problem getting along with people at work and had no history of aggression toward others. R. 19–20. Therefore, the limits that the ALJ set in the RFC were supported by substantial evidence, and adequate to accommodate Nolen and her potential coworkers.

### B. Concentration, Persistence, and Pace

Next, Nolen raises several issues with respect to the ALJ's treatment of her limitations in concentration, persistence, and pace. First, she argues that the ALJ's restriction of "no detailed or complex work" does not adequately address her limitations with concentration, persistence, and pace. Pl.'s Mot. Summ. J. 12. Second, Nolen argues that the ALJ did not properly articulate Nolen's mild limitations in concentration, persistence, and pace in her hypothetical questions to the VE. Pl.'s Mot. Summ. J. 11–12. As discussed in more detail below, the Court finds that the ALJ did not properly consider Nolen's limitations in

concentration, persistence, and pace.

### 1. The ALJ did not properly account for Nolen's difficulties with concentration, persistence, or pace in the RFC

Nolen claims that the ALJ did not properly account for her mild difficulties with concentration, persistence, and pace. The Court agrees. Limiting Nolen to "no detailed or complex work" does not appear to account for problems with concentration, persistence, and pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). In fact, the ALJ explicitly states that the limitation "no detailed or complex work" was included "due to side effects of medication." R. 21, 555. Therefore, it appears that the limitation in the RFC was related to side effects from medication, not necessarily a mild difficulty with concentration, pace, or persistence. Whether or not the "no detailed or complex work" limitation was aimed at mild difficulties with concentration, persistence, and pace, the Court is unable to trace the path of the ALJ's reasoning on this point. *See Hickman*, 187 F.3d at 689 (7th Cir. 1999). The accurate and logical bridge that should exist between the evidence and the ultimate conclusions is insufficient. *See id.* The Court must therefore remand on this basis.

Even if this limitation was meant to address Nolen's mild difficulty with concentration, persistence, and pace, it was still inadequate. Limitations on the complexity of tasks or the skill level of a given job have been found not to account for problems with concentration, persistence, and pace because "the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." *O'Connor-Spinner*, 627 F.3d at 620 (quoting SSR 85-15). In other words, the "ability to learn how to do tasks of a given complexity," as when a claimant is restricted to simple, repetitive tasks, does not necessarily correlate with "[t]he ability to stick with a given

task over a sustained period." *O'Connor-Spinner*, 627 F.3d at 620.  The Court finds no material difference between the insufficient language used in *O'Connor-Spinner*—"simple, repetitive tasks"—and the language used here—"no detailed or complex work."  In both instances, the limitation goes to the complexity of the work, and not necessarily to the demands on an individual's concentration, persistence, or pace.

In addition,  Dr. Taylor's assessment of Nolen's difficulties with concentration, pace, and persistence, contained specific recommendations as to how those difficulties would affect Nolen's ability to work, but the ALJ does not adopt or discuss those recommendations, and the limitation of "no detailed or complex work" does not track the language from Dr. Taylor's opinion.  R. 203 ("[Nolen] retains the mental capacity to understand and remember simple and detailed instructions.  She could sustain her concentration and persist with simple tasks for a normal work period without interruptions from her MDI. . . . She is able to adjust to simple, routine changes in the work setting . . . .").  As such, Dr. Taylor's assessment appears contrary to the ALJ's RFC assessment and therefore the ALJ needed to explain why Dr. Taylor's opinion was rejected. *See Indoranto*, 374 F.3d at 474 (explaining that the ALJ must "confront the evidence that does not support his conclusion and explain why it was rejected.").

Commissioner argues only that an ALJ does not need to include "mild" limitations in her RFC determinations because "mild" denotes a non-severe impairment which does not significantly limit basic work activities.  Def.'s Mot. Summ. Affirmance 3 (citing 20 C.F.R. §§ 404.1521, 416.921).  Commissioner's position is wrong.  That a limitation is found to be non-severe says nothing about whether it should be accounted for in the RFC.  "Although [an] impairment[] may not on [its] own be disabling, that would only justify discounting [its] severity, not ignoring [it] altogether." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

9

Moreover, the Seventh Circuit has "frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Id.* (collecting cases).

### 2. The ALJ did not properly account for Nolen's difficulties with concentration, persistence, or pace in her hypotheticals to the VE

In posing hypothetical questions to the VE, the ALJ must make the VE aware of the "totality of a claimant's limitations," *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009), which includes a claimant's deficiencies in concentration, persistence, and pace, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). The most effective way for the ALJ to ensure the VE is fully apprised of the claimant's limitations is to include them in the hypothetical, but there is no *per se* requirement that the ALJ use these magic words ("concentration, persistence, and pace") in every case. *O'Connor-Spinner*, 627 F.3d at 620. But, as with the RFC determination, alternative phrasing such as "simple, repetitive tasks" may not adequately exclude from the VE's consideration those positions that present problems of concentration, persistence, and pace. *Id.*; *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Because the ALJ found that Nolen has a mild limitation in this area, the ALJ should have included it in her questions to the VE.

The Court recognizes that an ALJ's failure to explicitly discuss concentration, persistence, and pace in her hypothetical will not always require remand. But in most cases, as this one, the ALJ should refer expressly to such limitations "in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner*, 627 F.3d at 621. Since the VE's attention may not have been adequately focused on Nolen's limitation, the Court is not assured that the VE's testimony constitutes substantial evidence of the jobs Nolen can do. The case is

therefore remanded to the ALJ to address this defect.

### C.  Other challenges to the RFC determination

In her other challenges to the RFC determination, Nolen essentially asks the Court to reweigh the evidence that the ALJ considered: she argues that her pain was not given due consideration and that her Global Assessment of Functioning (GAF) scores should have been given greater weight.  The Court finds, however, that the ALJ adequately discussed the evidence and her reasons for assigning certain evidence more or less weight.

#### 1. The severity of Nolen's pain and functional limitations

The ALJ detailed Nolen's treatment history with regard to pain management in her decision, but ultimately found that "the objective medical findings do not support the degree of pain and functional limitation alleged" by Nolen.  R. 28.  In making that finding, in addition to summarizing treatment notes from numerous medical exams, the ALJ considered Nolen's noncompliance with doctor directives to address her pain. For example, Nolen's attendance at physical therapy was often erratic.  R. 24, 25.   The ALJ also described other evidence documenting Nolen's progress, such as Dr. Chesser's notes from July 2009 that said that Nolen was doing much better and the injections she received to relieve her back pain reduced her pain by eighty percent.  R. 29.  Nolen rated her pain at a "zero" in June 2010.  R. 29.

Nolen suggested during her testimony that she still experiences severe neck pain and her arm becomes numb if she uses it a lot, but was not numb that often because she reduced her activity during the day.  R. 534.  The ALJ discounted Nolen's testimony based on her credibility finding as discussed below, but nevertheless explicitly incorporated Nolen's own testimony about her physical limitations into the RFC.  Nolen testified that she could sit for one and one quarter hours at a time, stand for 45 minutes, walk one block at a time, and carry her 20

pound baby, but felt more comfortable lifting 10–15 pounds.  R. 551–52.  The ALJ incorporated those precise limitations into the RF:

> she is limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; sit 1 and ¼ hours at a time for a total of 6 hours a day; stand 45 minutes at a time and walk 1 block at a time for a total of standing and walking 4 hours a day;

with the additional limitations of "no climbing ladders, ropes or scaffolds; no hazards such as dangerous machinery or unprotected heights; occasional climbing of ramps and stairs; occasional balancing."  R. 20–21.  On the whole, the RFC's accounting for Nolen's pain was supported by substantial evidence and will not be overturned.

### 2. Nolen's GAF scores

Nolen contends that the ALJ did not consider her GAF scores.  Pl.'s Mot. Summ. J. 16 ("The ALJ does not mention a single GAF score in her decision.").  In general, GAF scores are "useful for planning treatment" but do not necessarily reflect a patient's functional level. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).  Rather, GAF scores reflect either severity of symptoms or functional level, whichever is worse.  *Id.*  Accordingly, "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score."  *Id.* (quoting *Wilkins v. Barnhart*, 69 Fed. App'x 775, 780 (7th Cir. 2003)).  And, where GAF scores are considered, the ALJ may account for the fact that the score may not "reflect the clinician's opinion of functional capacity."  *Denton*, 596 F.3d at 425.  Here, the ALJ did consider Nolen's GAF scores, noting that Nolen "had GAF scores as low as the 40s."  The ALJ determined, however, that "these ratings were apparently based on the claimant's subjective self-reported complaints, as the clinical findings did not support the degree of impairment that would be consistent with such low scores."  R. 29.  Since an ALJ may properly discount GAF scores on this basis, and the ALJ sufficiently articulated

her assessment of that evidence, the Court is able to trace the path of her reasoning. *See Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999).

### 3. Whether the ALJ equated the ability to perform limited daily activities with the ability to perform substantial gainful activity.

Nolen argues that the ALJ wrongfully equated the ability to perform limited daily activities with the ability to perform substantial gainful activity. Pl.'s Reply Br. 2; *see also Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."). The Court finds that the ALJ did not place undue weight on Nolen's daily activities. The ALJ just described inconsistencies between Nolen's claimed limitations and her admitted abilities in a general sense. R. 29. In particular, the ALJ discussed several instances where Nolen's daily activities were inconsistent with the "degree of symptoms and functional limitations alleged," such as hygiene and the frequency with which she leaves home. This is not tantamount to equating Nolen's daily activities with the ability to perform substantial gainful activity. Therefore, Nolen's argument on this point is unavailing.

## II. The ALJ's boilerplate language

Nolen also asserts that the case should be remanded due to the ALJ's use of the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Given the negative treatment this language has received, it is a wonder why ALJs use it at all,

since it "implies that the ability to work is determined first and is then used to determine the claimant's credibility." *Bjornson v. Astrue*, 671 F.3d 640, 644 (7th Cir. 2012); *see also Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir. 2010). Here, though, as required by SSR 96-7p, the ALJ provided specific reasons for her credibility finding, supported by the evidence in the record, and made clear the weight the ALJ gave to Nolen's claims and the reasons for that weight. In particular, the ALJ explained various discrepancies between Nolen's claimed limitations and her admitted activities. R. 29–30. The ALJ's use of boilerplate language here is more akin to a summarizing statement than a credibility determination itself.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Commissioner's Motion for Summary Affirmance, ECF No. 12, and GRANTS Nolen's Motion for Summary Judgment, ECF No. 9. This case is REMANDED to the Administrative Law Judge for further proceedings consistent with this opinion.

Entered this 30th day of September, 2013.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE